UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GARY DINARDO,                     :        Hon. Joseph H. Rodriguez

     Plaintiff,              :        Civil Action No. 14-5716

v.                               :

                             OPINION

MEDCO HEALTH SOLUTIONS, INC.,  :
EXPRESS SCRIPTS PHARMACY, INC., as
Successor to MEDCO HEALTH SOLUTIONS  :
OF WILLINGBORO, L.L.C., and
EXPRESS SCRIPTS, INC.,           :

     Defendants.             :

This matter is before the Court on Defendants' motion for summary judgment.  [Doc. 29.]  The Court heard oral argument on the motion on April 20, 2016, and the record of that proceeding is incorporated here.  For the reasons place on the record that day, as well as those outlined below, the motion will be denied.

## Background

Plaintiff Gary DiNardo was employed as a power equipment operator at a Medco Health Solutions, Inc. pharmacy in Willingboro, New Jersey when Medco was acquired by Defendant Express Scripts, Inc. ("ESI") in April 2012.  He became ill at work on April 18, 2012 and ESI sent him to the hospital.  (Granieri Cert., Ex. C, Pl. Dep., p. 23-24.) Plaintiff's daughter, Carol DiNardo, also an ESI employee, contacted Melanie Speece, a

supervisor of ESI's Human Resources department, on her father's behalf. (Granieri Cert., Ex. D, Carol Dinardo Aff.; Granieri Cert., Ex. C, Pl. Dep., p. 26.)  Carol Dinardo advised Speece that her father had suffered a stroke and had been admitted to the hospital and she asked for instruction on how to get started on her father's disability.  (Granieri Cert., Ex. D, Carol Dinardo Aff.)  At that time, ESI was under contract with Aon Hewitt Absence Management ("Hewitt"), third party administrator of ESI's short-term disability ("STD") and Family Medical Leave Act ("FMLA") programs. (Speece Dep., p.30-31; Rey Cert., Ex. D, Roberson Dep., p. 11.)  Speece referred Carol DiNardo to Hewitt, Plaintiff applied for STD benefits through Hewitt, and his absence from work was designated FMLA leave.

Plaintiff was unable to return to work for over six months.  He exhausted his 12-week FMLA leave on July 10, 2012 and his 26-week STD benefits on October 10, 2012.  Plaintiff then received long term disability benefits until his return to work date of November 12, 2012.  When Plaintiff was medically cleared to return to work on November 12, 2012, however, he was informed that no vacant positions were available.  As such, Plaintiff's employment with ESI was terminated.

Plaintiff alleges that Defendants terminated his employment because of his disability or perceived disability, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, and in

retaliation for his request to take FMLA leave, in violation of the FMLA. Plaintiff also alleged that Defendants breached a contract to extend his disability leave to November 12, 2012 and return him to work.  Through briefing, however, Plaintiff has indicated he does not oppose the summary judgment motion as to the breach of contract claim.  (Pl. Br., p. 37.)

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under

the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact."  Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## NJLAD

Generally

New Jersey has adopted the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as the starting point in circumstantial evidence discrimination actions brought under its Law Against Discrimination.  Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 492 (1982).  Though the McDonnell Douglas framework is followed in cases of discriminatory discharge, the elements of the prima facie case are modified

to fit the circumstances.  Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596

(1998); Bell v. K.A. Indus. Services, LLC, 567 F. Supp. 2d. 701, 706 (D.N.J.

2008).

Failure to Accommodate

To make out a prima facie failure to accommodate claim under the

NJLAD, Plaintiff must show that: (1) he was disabled or perceived to have a

disability[1]; (2) he was otherwise qualified to perform the essential functions

of the job, with or without reasonable accommodation by the employer; (3)

he suffered an adverse employment action because of the disability.  Victor

v. State, 952 A.2d 493, 503 (N.J. Super. Ct. App. Div. 2008), aff'd as

modified, 4 A.3d 126 (N.J. 2010).  As to the second element, an example of

a reasonable accommodation is a leave of absence.  N.J. Admin. Code 13:13-

2.5(b)(1)(ii).

When an employee requests accommodation, the employer has a duty

to engage in an interactive process in an effort to assist the employee.

Jones v. United Parcel Svc., 214 F.3d 402, 408 (3d Cir. 2000).  To show

that an employer failed to participate in the interactive process, "the

employee must show the employer was informed of the disability, the

---

[1] The NJLAD refers to "handicap," but defines handicap as a disability.
Courts have used the terms interchangeably in this context.  See Victor v.
State, 203 N.J. 383, 399 (2010).

employee requested accommodation, the employer made no good faith effort to assist, and the accommodation could have been reasonably achieved" but for the employer's lack of good faith.  Victor, 952 A.2d at 504 (citing Tynan v. Vicinage 13 of the Superior Court, 798 A.2d 648, 657 (N.J. Super. Ct. App. Div. 2002)).  "Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered [the] employee's request, and offer and discuss available alternatives when the request is too burdensome."  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317 (3d Cir. 1999) (in the context of ADA and PHRA claims).

Here, Defendants argue that Plaintiff cannot show that he requested a reasonable accommodation for his disability of a leave of absence from April 19 to November 12, 2012, so Defendants' duty to engage in the interactive process was not triggered.  Rather, Defendants assert that Plaintiff requested STD benefits and FMLA leave, which were granted, but he did not request any additional leave of absence.

Plaintiff counters that because Hewitt, as Defendants' agent, was aware of his request for a leave of absence, Defendants were on notice that Plaintiff had made a request for reasonable accommodation under the LAD.

In addition, Plaintiff outlines the following facts in support of his position that Defendants had been provided with sufficient information regarding his need for an accommodation in the form of an extended leave of absence.

As stated above, Carol DiNardo contacted Hewitt and informed the representative that her father had suffered a stroke and needed a leave of absence.  (Granieri Cert., Ex. D, Carol DiNardo Aff.)  Hewitt's records indicate it received a call from Carol DiNardo on April 19, 2012 regarding her father's disability.  (Granieri Cert., Ex. D, Ex. K, Hewitt internal claim notes.)

ESI assigned its HR employee, Kimberly Jones, as the Leave of Absence, Short-Term Disability and FMLA Liaison to act between Hewitt and Plaintiff's management team at ESI. (Rey Cert., Ex. D, Roberson Dep., p. 14-15.)  Hewitt reported to Kimberly Jones as to the status of Plaintiff's leave of absence, short-term disability, and FMLA leave. (Id.)

In a letter on Express Scripts letterhead dated April 23, 2012, Marcie Arnett, Hewitt Case Manager, acknowledged that Hewitt had received Plaintiff's request for Short Term Disability leave of absence to begin April 18, 2012.  (Jett Cert., Ex. A.)  The letter also advised Plaintiff that his "Manager and HR Representative have been notified of the status of this leave request."  (Id.)  The letter also stated:

> If you do not return to work on the date your leave ends, your absence will be subject to the attendance provisions of company policy or your collective bargaining agreement, as appropriate, and the company may consider you to have voluntarily resigned your job.

(Id.)  Another letter on Express Scripts letterhead, also dated April 23, 2012, informed Plaintiff that he was provisionally eligible for FMLA leave pending adequate medical certification of a serious health condition. (Jett Cert., Ex. B.)  This correspondence was from Jen Piasecki, Leave Manager. (Id.)  A letter from Arnett dated May 1, 2012 reiterated a request for objective medical evidence from Plaintiff's health care provider, and again noted that Plaintiff's HR Representative was notified of the status of his leave request.  (Jett Cert., Ex. C.)

On May 6, 2012, a letter from Arnett on Express Scripts letterhead notified Plaintiff that he had been approved for benefits under Medco's STD Plan from April 18, 2012 through June 6, 2012.  (Jett Cert., Ex. D.)  The letter indicated that an estimated return to work date was still needed, and advised that Plaintiff was to contact his HR Representative at least 2 business days prior to return to work to meet security protocols.  (Id.)

By a letter on Express Scripts letterhead dated June 26, 2012, Arnett informed Plaintiff that he would exhaust his FMLA leave on July 10, 2012 "and will have no job protection after this period."  (Jett Cert., Ex. E.)  That letter also stated:

> If you have been approved for short-term disability benefits, you will continue to receive them even if you are no longer protected under FMLA.  You are not required to return to work until it has been determined that you are no longer disabled.
>
> *      *      *
>
> If your approved leave period is longer than your available FMLA time, the company can't assure you'll be returned to your same or an equivalent job at the end of your leave.  When you return to work at the end of your approved leave, the company will consider you for any available jobs that it determines you're qualified to fill.  If you're not qualified for any available jobs, the company will terminate your employment.

(Id.; accord Jett Cert., Ex. G.)  ESI was aware that Plaintiff's short-term disability benefits were extended through July 17, 2012, (Jett Cert., Ex. F), and September 30, 2012, (Jett Cert., Ex. H), and then October 10, 2012 with a return to work date of November 12, 2012, (Jett Cert., Ex. I), and finally through October 16, 2012, (Jett Cert., Ex. J, K).  Plaintiff was approved for long-term disability benefits to his return to work date of November 12, 2012.  (Rey Cert., Ex. D, Roberson Dep., p. 16.)

Plaintiff personally spoke with Hewitt and Joe Radzavicz of ESI's HR department in September and early October of 2012 about his need for additional leave of absence for his medical condition. (Rey Cert., Ex. A, Pl. Dep., p. 35; Granieri Cert., Ex. R, Radzavicz Dep., p. 41; Granieri Cert., Ex. D, Ex. J, Speece Dep., p. 67.)  Plaintiff advised that he was not medically cleared to return to work on October 1, 2012 because he needed additional leave for the implantation of a pacemaker.  (Pl. Dep., p. 35-36.)  After

verifying Plaintiff's condition with his medical provider, Hewitt, on behalf of ESI, approved the additional leave of absence from October 1, 2012 to November 12, 2012.  (Granieri Cert., Ex. B, Roberson Dep., p. 17-18, 70.) Hewitt memorialized its finding in writing to ESI on October 2, 2012, noting that Plaintiff's STD benefits were extended to October 16, 2012 and his new return to work date would be November 12, 2012.  (Granieri Cert., Ex. O, correspondence; Ex. S, email; Ex. J, Speece Dep., p. 70.)  At that time, Hewitt also advised Plaintiff to contact ESI's HR department two days prior to his return to work, and that HR and Plaintiff's supervisor had been notified of the status of his leave request.  (Granieri Cert., Ex. H, correspondence; Ex. J, Speece Dep., p. 71.)

On Friday, November 9, 2012, Plaintiff called ESI in preparation for his Monday, November 12, 2012 return to work date, but the call went to voicemail, and Plaintiff left a message.  (Rey Cert., Ex. A, Pl. Dep., p. 37-38; 106.)  At 8 a.m. on November 12, 2012, Plaintiff again called ESI's HR Department about his return to work that day.  (Id. at p. 37.)  Melanie Speece told Plaintiff she had to "find out a few things" and would call him back.  (Id.)  Speece has no recollection of this phone call.  (Ex. J, Speece Dep., p. 84.)  When he did not receive a return phone call, Plaintiff again called HR at 4:15 p.m. on Monday, the 12th.  (Pl. Dep., p. 39.)  Plaintiff testified that Speece then informed Plaintiff that he was not returning to

11

work.  (Id.)  "After six months disability, you've been out too long; they couldn't hold your job anymore."  (Id.)  Speece was unable to recall the details of this telephone conversation with Plaintiff.  (Rey Cert., Ex. F, Speece Dep., p. 53; Granieri Cert., Ex. J, Speece Dep., p. 80.)  She advised other personnel in the HR Department of Plaintiff's termination from ESI and noted that the separation was due to a "failure to return from leave of absence."  (Granieri Cert., Ex. J, Speece Dep., p. 87; Ex. U, Personnel Record.)

ESI employees approved for leaves of absence are not absent without permission but rather have permission to remain out of work until they are given a return to work date.  (Rey Cert., Ex. D, Roberson Dep., p. 17.)  So, according to ESI, Plaintiff was on an approved leave of absence from April 18, 2012 until his return to work date of November 12, 2012.  (Id., p.18.)  Implicit in an employer granting "leave" is that the employee still has a job to return to.

In this case, the Court finds a dispute of fact exists concerning Defendants' good faith efforts to engage in the interactive process.  There is evidence from which a reasonable jury could conclude that Defendants failed to accommodate Plaintiff for his disability when they denied his request for leave until November 12, 2012.  A reasonable jury could find that Plaintiff made a clear request for an accommodation in the form of

leaves of absence in excess of what was otherwise provided by ESI's leave policies. He submitted doctor's notes related to his subsequent absences. Rather than engage Plaintiff in an interactive process to find an acceptable accommodation, Defendants never communicated with Plaintiff regarding his request or doctor's notes, and denied his request to return to work after leave the day they fired him.  A reasonable jury could therefore find that Defendants' failure to communicate with Plaintiff was a bad faith response to Plaintiff's request for an accommodation.

Defendants next argue that Plaintiff was not terminated because of his disability, but because on November 12, 2012, when he was medically cleared to return to work, there was no position available for which he was qualified.  Following the merger of ESI and Medco, reductions in the workforce at the ESI Willingboro facility were planned due to a reduction in volume capacity as a result of client loss, geographic optimization of postage cost for the enterprise, and other factors.  A reduction in force announced on November 8, 2012 eliminated the third shift operations at the ESI Willingboro Pharmacy.  Plaintiff's power equipment operator position was then eliminated.  Three additional power equipment operators were notified on January 30, 2013 of the elimination of their positions effective March 30, 2013.  (Rey Cert., Ex. O.)  The Willingboro facility eventually closed in the Spring of 2015, and many of the Willingboro

employees were transferred to a new facility in Florence, New Jersey.  (Rey
Cert., Ex. F, Speece Dep., p. 18-22.)

Plaintiff argues that any reduction in force did not become effective
until March 2013, and no other power equipment operators were
terminated as of November 12, 2012.  In fact, no power equipment
operators were terminated during the time Plaintiff was on leave – from
April 18, 2012 through November 13, 2012.  (Rey Cert., Ex. D, Roberson
Dep., p. 26-27, 29.)  Rather, the reduction in force for power equipment
operators took place March 31, 2013.  (Id., p. 29.)  In addition, ESI would
typically give employees at least 60-days' notice that they were selected for
an upcoming reduction in force.  (Granieri Cert., Roberson Dep., p. 33-34.)
Plaintiff was given no notice.  Therefore, the Court finds a genuine issue of
material fact as to whether Plaintiff was terminated because of his
disability, rather than as part of a reduction in force.

Discriminatory Discharge

In order for a plaintiff to establish a prima facie case of
discriminatory discharge because of a handicap or disability, he must
establish that: (1) he is disabled or perceived to have a disability; (2) he was
otherwise qualified to perform the essential functions of the job, with or
without reasonable accommodation by the employer; (3) he was
terminated; and (4) the employer sought to or did fill the position with a

similarly qualified person. Victor v. State, 4 A.3d 126, 141 (N.J. 2010).

Once the employee has satisfied his burden of establishing a prima facie

case of discrimination under the LAD, the burden of production then shifts

to the employer to rebut the prima facie case by "articulat[ing] some

legitimate, nondiscriminatory reason" for its alleged unlawful action.

Clowes, 109 N.J. at 596; see also Laresca v. AT & T, 161 F. Supp. 2d. 323,

335 (D.N.J. 2001). "In order to defeat a summary judgment motion if the

employer answers the plaintiff's prima facie case with [a] legitimate,

nondiscriminatory reason [ ] for its action, the plaintiff must point to some

evidence, direct or circumstantial, from which a fact finder could

reasonably either (1) disbelieve the employer's articulated legitimate

reasons; or (2) believe that an invidious discriminatory reason was more

likely than not a motivating or determinative cause of the employer's

action." Laresca, 161 F. Supp. 2d at 335–36; Sheridan v. E.I. DuPont de

Nemours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996).

 In evaluating employment cases, the task of the Court is not to

second-guess employment decisions, but is instead to determine whether

the employment decisions were motivated by an illegal discriminatory

purpose. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27

(3d Cir. 1992).  Thus, to establish pretext, "the plaintiff cannot simply show

that the employer's decision was wrong or mistaken, since the factual

dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Rather, the . . . plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employers's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer' did not act for [the asserted] nondiscriminatory reasons." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir.1994) (internal citations omitted); Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 551 (citing Fuentes, 32 F.3d at 764-65).

Defendants argue that Plaintiff cannot satisfy the fourth prong of the prima facie case because Defendants did not seek anyone to replace Plaintiff.  Rather, ESI was in the process of reducing the number of positions in Plaintiff's job classification.  Next, Defendants argue that even if Plaintiff could establish a prima facie claim of discrimination, he cannot show that Defendants' reasons for his termination were pretextual.  ESI asserts that Plaintiff was terminated solely because there were no vacant positions for which he was qualified when he was medically cleared to return to work on November 12, 2012.  Again, Plaintiff has presented sufficient facts to raise a dispute as to whether his disability was the motivating reason behind his termination.

The Family and Medical Leave Act

Generally

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601,

("FMLA") was enacted to provide leave for workers whose personal or

medical circumstances require that they take time off from work in excess

of what their employers are willing or able to provide.  Victorelli v.

Shadyside Hosp., 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. §

825.101). The Act is intended "to balance the demands of the workplace

with the needs of families . . . by establishing a minimum labor standard for

leave" that lets employees "take reasonable leave for medical reasons, for

the birth or adoption of a child, and for the care of a child, spouse or parent

who has a serious health condition." Churchill v. Star Enters., 183 F.3d 184,

192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).

The FMLA guarantees eligible employees 12 weeks of leave in a one-

year period following certain events: a serious medical condition; a family

member's serious illness; the arrival of a new son or daughter; or certain

exigencies arising out of a family member's service in the armed forces.  29

U.S.C. § 2612(a)(1).  Leave must be granted, when "medically necessary," on

an intermittent or part-time basis. § 2612(b)(1).  Upon the employee's

timely return, the employer must reinstate the employee to his or her

former position or an equivalent. § 2614(a)(1).  Although employers may

adopt or retain leave policies more generous than any policies that comply with the requirements under the FMLA, 29 U.S.C. § 2653, the "rights established by the Act may not be diminished by any employment benefit program or plan," 29 C.F.R. § 825.700.

The Act makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" these rights, § 2615(a)(1); to discriminate against those who exercise their rights under the Act, § 2615(a)(2); or to retaliate against those who file charges, give information, or testify in any inquiry related to an assertion of rights under the Act, § 2615(b).  An employer also cannot "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159-60 (3d Cir. 1998) (quoting 29 C.F.R. § 825.220(c)).  But where an employee is discharged during a protected leave for a reason unrelated to the leave, there is no right to reinstatement.  Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 141 (3d Cir. 2004) (citing 29 C.F.R. § 825.216(a)(1)).

Retaliation

In cases alleging retaliation in the employment setting, courts generally apply the familiar burden-shifting framework established in McDonnell Douglas, 411 U.S. 792.  See Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001).  Again, the first step under McDonnell Douglas is

to establish a prima facie case of retaliation for requesting FMLA leave.  411 U.S. at 802.  To carry this initial burden in a retaliation case, a plaintiff must show that: (1) he engaged in protected activity (taking FMLA leave); (2) he suffered an adverse employment decision; and (3) the adverse decision was causally related to the leave.  Conoshenti, 364 F.3d at 146-47. A causal connection may be established by circumstantial evidence, such as temporal proximity, a pattern of antagonism, and pretext.  Kachmar v. SunGard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997).  This indirect evidence is to "be considered with a careful eye to the specific facts and circumstances encountered."  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279, n.5 (3d Cir. 2000).

Once a prima facie case is established, the burden of persuasion shifts back to the defendant to put forth "a legitimate, nondiscriminatory reason" for the employment decision. Id.; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If the defendant succeeds in demonstrating that the decision was based on a non-discriminatory reason, Plaintiff has the burden of proving by a preponderance of the evidence that the stated reason was pretextual.  Burdine, 450 U.S. at 260; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

"[F]iring an employee for [making] a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as

19

retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009).  On the other hand, an employer is not required to suspend its termination proceedings just because the employee requests medical leave.  See, e.g., Clark County Sch. Dist., 532 U.S. at 272.  "A contrary holding might impede employers from permissible terminations and encourage employees aware of an impending termination to attempt to create their own 'severance package.'"  Windfelder v. The May Dep't Stores Co., 93 Fed. Appx. 351, 355 (3d Cir. 2004).

Defendants argue that Plaintiff cannot make out a causal connection between his FMLA leave and the termination of his employment on November 12, 2012.  Further, Defendants contend that Plaintiff cannot demonstrate discriminatory animus in retaliation for him taking FMLA leave; ESI again cites to the absence of an available position for Plaintiff to fill on November 12, 2012.

While an "employer is entitled to reduce and/or reorganize its staff," it "may not use its RIF/reorganization/improved-efficiency rationale as a pretext to mask actual discrimination or retaliation."  Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 166 (1st Cir. 1998).  Again, ESI's corporate representative and Director of HR acknowledged that the reduction in force for power equipment operators took place on March 31, 2013, (Rey Cert., Ex. D, Roberson Dep., p. 29), well after ESI failed to return Plaintiff to his

position.  Because there exists a genuine issue of material fact as to ESI's cited reason for termination, summary judgment will be denied.

<u>Conclusion</u>

For the reasons stated above, and in keeping with the discussion held on the record during oral argument, Defendants' motion for summary judgment will be denied.  An Order will accompany this Opinion.

Dated: May 24, 2016                        /s/ Joseph H. Rodriguez
                                           Joseph H. Rodriguez, USDJ